# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PUBLIC SERVICE MUTUAL INSURANCE COMPANY,<br>　　　　Plaintiff,<br><br>v.<br><br>CAPE COD DISTRIBUTORS, INC.;<br>JEAN PAUL ARTEAGA;<br>DONUT II REALTY, LLC;<br>MCCARTHY MANAGEMENT CO., INC.; and<br>DUNKIN' DONUTS CORP. (INC.),<br>　　　　Defendants. | Case No. 09-cv-11872 |

## PLAINTIFF'S OPPOSITION TO DEFENDANTS, CAPE COD DISTRIBUTORS'S, DUNKIN BRANDS'S, AND DONUT II REALTY, LLCS' CROSS-MOTIONS FOR SUMMARY JUDGMENT

Public Service Mutual Insurance Company ("PSM") hereby opposes and replies to the cross-motions for summary judgment of defendants Cape Cod Distributors ("CCD"), Dunkin Brands, and Donut II Realty, LLC. The Court must allow PSM's Motion for Summary Judgment and deny Defendants' Cross-Motions because:

　　1.　　The Primary and Umbrella Policies issued by PSM to CCD were purposefully configured so that there would be no liability coverage for claims by CCD employees like Mr. Arteaga and, instead, such injured employees would be receive full and fair compensation for their injuries under the statutorily-required workers' compensation policy. By contrast, these policies would afford coverage to CCD and Additional Insureds named within its policy for claims brought against any of them by third-parties (non-employees) who are not afforded worker's compensation coverage under the policy. PSM's insurance policies were never intended to afford coverage to CCD or the Defendants/Additional Insureds for claims made by insured employees, and the inclusion of the Intra-Insured

671619.1

Exclusion (PSM 5317) seeks to effectuate this intent. Ultimately, PSM's duties are defined by what it contracted to do with CCD and not what CCD may have contracted to do with Dunkin Brands, Donuts II Realty, and McCarthy Management, CO., Inc. *See Couch on Ins.* §11:30.

2. It is indisputable that there is no coverage under the polices for claims asserted by Mr. Arteaga against his employer, CCD (the named insured). Not only are such claims barred as a matter of law by the worker's compensation bar (Mass Gen. L. ch. 152, section 24), but no insurance coverage exists for claims because they fall squarely within the scope of the "The Bodily Injury to Employees" Exclusion. The Exclusion provides that PSM does not cover CCD's liability for "bodily injury" to an employee as an "employer or in any other capacity."

3. Because there is no coverage for claims asserted by Mr. Arteaga against CCD, the defendants cannot (and do not) attempt to rely on the Additional Insured Endorsements (FB 3407 ("Liability Coverage for Additional Persons or Organizations") and FB 3590 ("Additional Coverage for Grantor or Franchise) as a basis for coverage. After all, the FB3407 and FB 3590 Endorsements contain express and unequivocal limitations that "if [CCD]'s liability for an accident would not be coverage under [the primary] policy, [PSM] will not coverage any additional person or organizations for the same type of loss." Defendants do not seriously dispute that these Endorsements afford no coverage.[1]

4. The sole basis for coverage (as set forth in Defendants' Oppositions and Cross-Motions) is the position that the "Insured Contract" provisions contained within the Primary

---

[1] CCD failed to address or discuss the limitation language in the FB 3407 and FB 3590 in any way and, instead, suggested (without support) that the Endorsements "expand" the coverage of the policy.

Policy conflict with the various exclusions, (particularly the Intra-Insured Exclusion) and, thus, create an ambiguity that must be resolved in favor of the defendants. This argument is ultimately grounded on the premise that PSM's interpretation of the policy would render CCD's coverage illusory, as applying the "Intra-insured Exclusion" to exclude coverage to all defendants would negate the very coverage that CCD sought when it added Donut II Realty, Dunkin Brands, and McCarthy Management Co., Inc. to the policy as Additional Insureds (or as CCD puts it – "reliance on the intra-insured exclusion would utterly defeat the sole purpose of adding Donut II and Dunkin' Brands as Additional Insureds to the policy).[2] Despite the defendants' contentions, PSM's interpretation of the policies does not create an ambiguity, nor does it render CCD's coverage illusory. PSM's insurance policies were never intended to afford coverage to CCD or the defendants for claims made by insured employees, and the inclusion of the "Intra-Insured Exclusion" (PSM 5317) seeks to effectuate this intent. The policies cannot be considered ambiguous or illusory because they would afford coverage to CCD and the defendants for claims brought by anyone who is not an employee of CCD. Put otherwise, the exclusion for claims asserted by employees of CCD is a narrowly-tailored limitation which bars coverage for a distinct class of claimants (who, like Mr. Arteaga, are entitled to receive full and fair compensation for their injuries under CCD's worker's compensation policy). Simply put, these policies provide no coverage

---

[2] In their briefs, the defendants rely upon *Parker v. John Moriarty*, 2007 WL 2429719 (Mass. Super. 2007), *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254 (11th Cir. 2007), and *Cowan Systems, Inc. v. Harleysville Mut. Ins. Co.* 457 F.3d 368 (4th Cir. 2006). All of these cases essentially stand for the proposition that an "Insured Contract" provision and an "Intra-Insured Exclusion" are repugnant or "ambiguous, at best," and applying the "Intra Insured Exclusion" to bar coverage for Additional Insureds would destroy the coverage originally sought by the insured. Although these cases refer to or reference the "reasonable expectations" doctrine, as is pointed out by the defendants, however, they are more appropriately characterized as ambiguity/illusory coverage cases. As has been discussed and will be further discussed below, these cases are

3

671619.1

for liability claims asserted by employees of the named insured (CCD) but will provide coverage for liability claims asserted by third-parties, including, but not limited to, visitors to the premises who are not employed by CCD.

As an initial matter, PSM refers back to and incorporates by reference the arguments previously made in its Motion for Summary Judgment, and in so doing, asks the court to grant PSM's Motion for Summary Judgment and deny the defendants Cross-Motions for Summary Judgment. Here, PSM will address the fundamental errors of the positions and analysis offered by the defendants in their Oppositions/Cross-Motions.

## ARGUMENT

### I. THE "INTRA-INSURED EXCLUSION" BARS COVERAGE FOR THE CLAIMS ASSERTED BY CCD AND THE DEFENDANTS.

The "Intra-Insured Exclusion" clearly and unambiguously bars claims made by one insured against another insured. Defendants' contention that the "Intra-Insured Exclusion" is rendered ambiguous and illusory when compared to the "Insured Contract" provision is flawed, as Massachusetts law does not allow a party to compare and contrast exclusions and the exceptions contained in different sections of an insurance policy for purposes of creating an ambiguity. Furthermore, even if the defendants are correct in arguing that the "Insured Contract" Provision constitutes an affirmative coverage grant under the basic insuring agreement, which PSM denies, the two provisions can still be read harmoniously and without ambiguity while still affording CCD the coverage which it and PSM envisioned.

---

distinguishable, and a proper interpretation of the Insured Contract provision and the Intra-Insured provision within the PSM policies results in neither ambiguity nor illusory coverage.

4

671619.1

### a. Under MA Law, Exclusions And Any Exceptions Contained Therein Cannot Be Compared Against Each Other For Purposes Of Manufacturing An Ambiguity

Defendants mistakenly take the positions that the "Insured Contract" provision is a term of the basic insuring agreement, the basic insuring agreement therefore extends coverage to Dunkin Brands, Donut II Realty, and McCarthy Management Co., Inc., and any Exclusion which contains language to the contrary creates ambiguity and illusory coverage. To be clear, the Basic Insuring Agreement – as contained on page 31 and page 32 under **"Who Has Liability Coverages"** and **"Bodily Injury and Property Damage"** respectively - does not contain the "Insured Contract" provision on which the defendants rely. Instead, the "Insured Contract" provision, operates as an exception to the exclusion for liability assumed by CCD "under contract or other agreement." The pertinent portion of the Primary Policy reads as follows:

> *RESTRICTIONS ON YOUR POLICY'S LIABILITY COVERAGES. There are some restrictions on your policy's Liability Coverages. These restrictions are described below.*
>
> Assumed Liability. We will not cover liability that you or anyone else covered under your *Liability Coverages* assumes under contract or other agreement.
>
> We will cover liability:
>
> - assumed in a contract or agreement that is an "insured contract"; or
>
> - that you or anyone else covered under your *Liability Coverages* would have in the absence of the contract or agreement.

*See PSM Brief,* Ex 4 at p. 34. As is made clear by the fact that the "Insured Contract" provision appears in direct sequential order under the "Restrictions On Your Policy's Liability Coverages" heading, it is undoubtedly intended to operate as an exception to the

5

general exclusion that prohibits CCD from improperly receiving coverage for liabilities which it contractually undertakes as part of its business function.

Defendants' avowed position is that the "Insured Contract" provision and the "Intra-Insured Exclusion" (Endorsement PSM 5317) cannot be read together, as comparing the two creates an ambiguity. In other words, the defendants compare the language of an exclusion with the language of an exception to an exclusion to manufacture an ambiguity contained within the policy. Such an interpretation is inappropriate under Massachusetts law. As the Massachusetts Supreme Judicial Court explained in *Continental Cas. Co. v. Gilbane Building Co.*, 391 N.E.2d 209, "each exclusion is meant to be read with the insuring agreement, independently of every other exclusion." 391 N.E.2d 209, 214 (Mass. 1984) (citing Tinker, *Comprehensive General Liability Insurance Perspective Overview*, 25 Fed'n Ins. Counsel Q. 217, 223 (1975)). The *Continental Casualty* Court then went on to compare each exclusion separately as it relates to the basic insuring agreement. *Id.* at 151.

In the present matter, defendants have improperly compared the language of one exclusion with the language of another exclusion to create an ambiguity where none existed. These exclusions must be interpreted separately, meaning that: (1) the "Insured Contract" Exception to the Assumed Liability Exclusion extends coverage under the basic insuring agreement to parties who have may be entitled to contractual indemnification from named insured, however, (2) the basic insuring agreement is still subject to all valid exclusions, including the "Intra-Insured Exclusion." To hold otherwise would ultimately render every exclusion in the entire policy void as against the defendants, and PSM would be obligated to unconditionally afford Dunkin Brands, Donuts II Realty, and McCarthy

Management coverage, regardless of the circumstances, even where no coverage existed for CCD. Clearly such a scheme was not intended when PSM issued the policies to CCD.

When properly construed, no ambiguity exists and the two provisions co-exist without issue and as intended – coverage is afforded to entities like the defendants pursuant to the "Insured Contract" provision in all instances <u>except</u> where they are being sued by another insured, such as Mr. Arteaga. This interpretation makes senses, as insurance policies are not designed to provide coverage for quarreling insureds. Thus, the defendants' interpretation of the policy is improper, and Summary Judgment should be granted in favor of CCD.

> b. **Even If The Court Were To Accept The Defendants' Contentions That The Insured Contract Provision Is Part Of The Basic Insuring Agreement, PSM's Analysis Still Does Not Lead To Ambiguity Or Illusory Coverage.**

Even if the Court were to consider the "Insured Contract" provision an affirmative coverage grant rather than an exception to an exclusion, the analysis still would not result in ambiguity, illusory coverage, or even coverage which could not have been reasonably expected or anticipated by CCD after a plain reading of the policy.[3]

---

[3] CCD has submitted with its brief an affidavit of Jose S. Cuoto, President of CCD, in which Mr. Cuoto states at ¶ 18 that he "understood that the primary policy would provide coverage to the Additional Insureds . . .in the event that *someone (perhaps one of CCD's employees, an independent contractor, or guest)* sustained accidental bodily injury on the premises." First, the affidavit should be given no credence by the court, as Massachusetts law clearly states that, when interpreting an insurance policy, "[t]he court's focus should be on determining the intent of the parties by examining the language of the policy, read as a whole." *Mass. Property Ins. Underwriting Assn. v. Wynn,* 806 N.E.2d 447, 450 (Mass.App.Ct. 2004), (citing *King v. Prudential Ins. Co. of America,* 267 N.E.2d 643, 646 (Mass 1971). "The objective is to 'construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." In addition, PSM contends that the above-quoted portion constitutes an indefinite and unclear statement contained within a self-serving affidavit which should not be allowed in support of CCD's Motion for Summary Judgment. *See generally Eastern Holding Corp. v. Congress Financial Corp.,* 910 N.E.2d 931 (Mass.App.Ct. 2009).

As mentioned in Footnote 2 above, defendants generally rely upon *Parker v. John Moriarty*, 2007 WL 2429719, *Cowan Systems, Inc. v. Harleysville Mut. Ins. Co.* 457 F.3d 368, and *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.*, 480 F.3d 1254, in arguing that applying the "Intra-Insured Exclusion" to negate coverage for the defendants contradicts the language of the "Insured Contract" provision, and undermines the intent and reasonable expectations of CCD in procuring Additional Insured coverage for Dunkin Brands, Donut II Realty, and McCarthy Management Co., Inc. However, there are several reasons why this reliance is misplaced.

First, these cases are all distinguishable from the present matter. With regards to *Parker v. John Moriarty*, PSM refers to and incorporates by reference pages 27 through 29 of its Motion for Summary Judgment in which it distinguished the Massachusetts Superior Court case in some detail, by arguing that: (1) the cross-suits exclusion in *Parker* is not as broad as the intra-insured exclusion here, because the PSM exclusion refers to suits brought by "any insured" as opposed to "an insured;" (2) unlike in *Parker*, no conflict exists in CCD's policies, as the Additional Insured endorsements expressly decline to extend coverage to the Additional Insureds where no coverage exists for the named insured – a point which the defendants hardly address and certainly do not affirmatively refute; and (3) the *Parker* court relied heavily upon the language of the insured contract in reaching its conclusion, and that agreement differed from the contracts present here.

Likewise, the insurance policy at issue *Cowan Systems, Inc. v. Harleysville Mut. Ins. Co.* is drastically dissimilar to PSM's policy, as the policy in *Cowan* did not contain an Intra-Insured or Cross-Suits exclusion which barred coverage for insured employees against Additional Insureds. *Cowan Systems, Inc. v. Harleysville Mut. Ins. Co.* 457 F.3d 368. Thus,

671619.1

the *Cowan* Court limited its analysis to the interpretation of whether the insured contract at issue fit within the perimeters of the Insured Contract Provision, ultimately holding that it did so, and the insurer's interpretation of its own Insured Contract provision was misconstrued. *Id.* at 374. Here, PSM does not contend that the "Insured Contract" provision does not apply to the lease agreement or franchise agreement at issue, but instead that the "Intra-Insured Exclusion" nonetheless applies to bar coverage.

Third, the defendants' reliance on *Twin City Fire Ins. Co. v. Ohio Cas. Ins. Co.* is also misplaced and inapplicable under the present circumstances. Both Dunkin Brands and CCD cite *Twin City* specifically for the position that "the cross-suits exclusion is at best ambiguous because the policy elsewhere expressly contemplates coverage of such obligations." *See CCD's and Dunkin's briefs at p. 17 and p. 16* respectively. *Twin City*, 480 F.3d at 1262. As a matter of mere technicality, under this logic it is hard to imagine a single instance in which an exclusion would ever apply, as exclusions, by definition, exclude coverage where other provisions within the policy otherwise provide for it. Furthermore, the United States District Court for the District of Alabama has held that the *Twin City* Court's striking of the Intra-Insured Exclusion on account of the presence of an Insured Contract provision only applies in those narrow situations where an Additional Insured seeks to enforce a limited indemnity obligation of the Named Insured; the Intra-Insured exclusion precludes coverage, however, where the Additional Insured is seeking coverage from the Named Insured for claims asserted directly by an insured employee against the Additional Insured in an underlying lawsuit. *Ohio Cas. Ins. Co. v. Holcim*, 744 F. Supp. 2d 1251 (S.D. Alabama, 2010). Unlike the Additional Insureds in *Twin City*, who only looked to enforce an indemnity obligation owed by the Named Insured, the defendants in this case

9

671619.1

at bar seek coverage under the PSM policy for the direct claims of the insured employee, Mr. Arteaga, in his underlying lawsuit. The Intra-Insured exclusion was included within the policy to negate coverage for such circumstances, and the reasoning in *Ohio Cas. Ins. Co. v. Holcim*, 744 F. Supp. 2d 1251 applies.

Finally, as explained by the Dunkin Brands and CCD in their briefs, the *Twin City* court held that the "the insurers interpretation would also result in denying the protection of the insured contract provision to anyone who is added as an additional insured, a result not contemplated by anything in the policy" *Twin City*, 480 F.3d at 1262. Again, this logic does not apply, as PSM is not seeking to eliminate any and all coverage intended for the Additional Insureds under the Insured Contract provision. Rather, PSM asserts that the policy provides broad and extensive coverage to the defendants under the circumstances in which it intended to do so – those being where a third party, who does not qualify as an insured, brings suit against CCD and/or Donut II Realty, Dunkin Brands, or McCarthy Management.[4] Under these circumstances, both CCD and the Additional Insureds would be afforded broad coverage (assuming no other applicable exclusions applied) in accordance with the Insured Contract provision, and this coverage would not be nullified by the Intra-Insured exclusion.[5]

Thus, because coverage broadly exists for CCD and the Defendants, even with the "Intra-Insured Exclusion" in full force and effect, the policy is not illusory, and does not

---

[4] By way of example, PSM offers the following hypothetical: if a delivery truck driver who was not employed by CCD suffered an injury while on the premises and then brought suit against CCD and the Defendants/Additional Insureds, the policy would afford a potential of coverage (assuming no other exclusions applied). This is because the Defendants/Additional Insureds would be afforded coverage under the "Insured Contract" provision, and the "Intra-Insured Exclusion "would not bar coverage for them, as the claims against them are not being asserted by an "insured" under the policy.

671619.1

undermine the supposed reasonable expectations of CCD. In fact, from a practical standpoint, if CCD anticipated or "reasonably expected" that its general liability policy afforded coverage to itself and the Defendants/Additional Insureds, then CCD would have no incentive to purchase a separate workers' compensation policy. As is discussed in PSM's Motion, CCD in fact did so, and Mr. Arteaga continues to receive Workers' Compensation benefits on account of the fact that he suffered an injury while in the scope of his employment for CCD.

For the above reasons, the defendants' Cross-Motions for Summary Judgment must be denied and, alternatively, the Court should allow Plaintiff, PSM's Motion for Summary Judgment.

II. **MR. AREAGA IS AN INSURED BECAUSE HE WAS ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT.**

Defendants also contend that, regardless of whether the "Intra-Insured Exclusion" applies, Mr. Arteaga was not acting within the scope of his employment, and therefore does not qualify as an insured under the policy, which affords coverage for "employees who are acting within the scope of their duties."[6] In response, PSM contends that the issue of whether or not Mr. Arteaga was acting within the scope of his employment may indeed be resolved on Summary Judgment for purposes of determining insurance coverage. *See*

---

[6] In fact, in its brief, CCD goes so far as to say that "PSM has adduced no admissible evidence that Mr. Arteaga was "acting within the scope of [his] duties at the time of the accident, and therefore this Court cannot find that he was an 'insured' for purposes of his claims against CCD and the additional insureds." As grounds for support of its contention that Mr. Arteaga was an employee acting within the scope of his duties when his injury occurred, PSM cites ¶ 77 of Mr. Arteaga's complaint in which he states that he was acting within the scope of his employment for CCD. Because an insurer's duty to defend is based on the facts alleged in the Complaint, (*See Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 731 N.E.2d 569, 573 (Mass. 1989)) PSM's reliance upon the allegations in the Arteaga complaint is proper. Any attempt by PSM to seek out and affirmatively introduce further admissible evidence in support of its coverage position would likely be considered inappropriate.

11

*Timpson v. Transamerica Ins. Co.,* 669 N.E.2d 1092, 1095 (Mass.App.Ct. 1996). In *Timpson*, the trial court granted Transamerica's Motion for Summary Judgment in which it argued that a player for the New England Patriots was not entitled to coverage as an additional insured under a policy issued by Transamerica Ins. Co. to the Patriots, for a sexual harassment claim filed by a female news reporter against him. *Id.* at 1093. Specifically, the lower court held on Summary Judgment that Transamerica did not have a duty to defend the player as an additional insured, because his alleged sexual harassment did not occur within the scope of his employment with the Patriots. *Id.* at 1094.

The Massachusetts Appeals Court affirmed the lower court's allowance of Transamerica's Summary Judgment Motion.*Id.* The Appeals Court cited the three part test for scope of employment enunciated in *Wang Labs, Inc. v. Business Incentives, Inc.*, 501 N.E.2d 1163 (1986), which looks at whether: (1) the conduct is of the kind he is employed to perform; (2) it occurs substantially within authorized time and space limits; and (3) it is motivated, at least in part, by a purpose to serve the employer, and held that the lower court acted appropriately in ruling on Summary Judgment that Timpson's alleged sexual advances fell outside of the scope of his employment. *Id.* at1095.

Based upon the above, it is clear that the Court is fully entitled to find as a matter of law, that Mr. Arteaga was acting within the scope of his employment. According to the allegations in the complaint, as well as the statements made within the defendants' briefs, it is undisputed that: (1) Mr. Arteaga was an employee of CCD; (2) he was on the CCD premises when his injury occurred; (3) he was present during his scheduled work hours and performing work activities; (4) he was employed to use CCD machinery to complete baking services; and (5) he escorted a repairman up onto the roof in order to help

troubleshoot issues with that machinery. Furthermore, any claim that he was not motivated by a desire to further his employers interest would border on disingenuous, as he was unquestionably on the roof with the repairman for the purpose of repairing a piece of CCD equipment. That he then tried to fix another piece of CCD equipment while up there does not take him outside of the scope of his employment.

Furthermore, the plaintiff has unambiguously asserted in his complaint that he was acting within the scope of his employment and PSM continues to pay Mr. Arteaga workers compensation benefits for the injuries that he suffered and is now seeking recovery. In fact, given that CCD is most likely receiving the benefit of protection from a direct claim by Mr. Arteaga in the underlying lawsuit on account of CCD's providing of workers compensation benefits to him, its assertion that Mr. Arteaga was not acting within the scope of his employment is unexpected to say the least.

Put simply, there is no doubt that Mr. Arteaga was acting within the scope of his employment when he suffered his injuries. As such, he undoubtedly qualifies as an insured under the policy.

III. **AS A MATTER OF LAW, THE COURT CANNOT FIND THAT PSM HAS BREACHED ITS OBLIGATIONS UNDER CHAPTERS 176D AND/OR 93A.**

"Where an insurer's denial of coverage is correct, there can be no violation of M.G.L. c. 93A or M.G.L. c. 176A" *Spurlin v. Merchants Ins. Co. of New Hampshire*, 866 F. Supp. 57, 62 (D. Mass. 1994); *Transamerica Ins. co. v. KMS Patriots*, 752 N.E.2d 777, 793 (Mass.App.Ct. 2001). Thus if the court determines, either on summary judgment or at trial, that PSM's denial of coverage was based on a plausible interpretation of its insurance policy, then it must determine that PSM acted in good faith as a matter of law.

Furthermore, insurers in doubt about whether coverage exists under a particular policy "are encouraged to seek declaratory relief." *Boston Symphony Orchestra, Inc. v. Commercial Union Ins. Co.*, 731 N.E.2d 569, 573 (Mass. 1989); *Dorchester Mut. Ins. Co. v. First Kostas Corp., Inc.*, 731 N.E.2d 569, 573 (Mass.App.Ct. 2000). In fact, "the object of the declaratory judgment law is to secure repose in controversies and to accelerate the determination of rights where prospective litigation causes unrest and is disturbing." *Myers v. Mut. Life Ins. Co. of New York,* 12 F.R.D. 447, 448 (W.D.M.O. 1952); *see also FRE Building Co., Inc. v. JB&D Constr. of NJ, Inc.*, 2005 WL 115152, at * 2 (Mass. Super. Ct 2005). Generally speaking, a declaratory judgment action brought in good faith for the purpose of seeking a coverage determination will insulate an insurer from liability under M.G.L. c. 93A and c. 176D. Bad Faith and Unfair and Deceptive Insurance Practices, Massachusetts Practice Series, 12 MassPrac § 25:62.

In the present matter, PSM has filed this declaratory judgment action in order to determine its rights and responsibilities on a number of complex insurance coverage issues on which Massachusetts Courts have either not spoken at all, or said very little. After filing its declaratory judgment action, and recognizing that there was little to no significant discovery to be done that would impact the key issues, PSM then moved for summary judgment so as to reach an expeditious final resolution of this good faith coverage dispute. As indicated in the case law above, PSM's actions are encouraged by Massachusetts courts as the prudent course, and from a practical standpoint, should afford PSM some protection from M.G.L. c. 176D/93A.

Finally, whether an insurer has acted in bad faith under M.G.L. c. 3A or 176D is a question of fact, and as CCD points out in its own memorandum,[7] is "an objective test that calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff. *CCD's Brief at p. 31*, citing *Demeo v. State Farm Mut. Ins. Co.*, 38 Mass.App.Ct 955, 956-957 (1995). Thus, it is not an appropriate determination for the court to make on summary judgment. For these reasons, the court should deny the defendants' counts for breach of M.G.L. c. 93a and M.G.L. c. 176d.

Respectfully submitted,
Public Service Mutual Insurance Company
By its attorney,

*/s/ John A. Donovan III*

John A. Donovan III
SLOANE & WALSH, LLP
Three Center Plaza, 8th Floor
Boston, MA 02108
(617) 523-6010/(617) 227-0927 – *fax*
jdonovan@sloanewalsh.com

---

[7] At this time it is unclear what CCD is alleging that PSM has actually done which constitutes bad faith practices, as CCD's allegation that refusing to defend and indemnify the additional insureds "*when it was reasonable clear that[PSM] could be liable to CCD*" does not constitute a breach of the provisions of M.G.L. c. 176D.

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 2th day of May, 2011, the within was electronically filed with the Court and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone not able to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*/s/ John A. Donovan III*
_____
John A. Donovan III