**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                                    )
PUBLIC SERVICE MUTUAL INSURANCE    )
COMPANY,                                         )
                                                    )
       **Plaintiff,**                              )
                                                    )
       **v.**                                       )      **Civil Action No. 09-11872-DJC**
                                                    )
CAPE COD DISTRIBUTORS, INC., JEAN  )
PAUL ARTEAGA, DONUT II REALTY LLC, )
MCCARTHY MANAGEMENT CO., INC.,     )
and DUNKIN' DONUTS CORP., INC.,        )
                                                    )
       **Defendants.**                           )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                                     March 8, 2012

## I.    Introduction

Public Service Mutual Insurance Company ("PSM") has brought this action against Cape

Cod Distributors, Inc. ("CCD"), Jean Paul Arteaga ("Arteaga"), Donut II Realty, Co. ("Donut II"),

McCarthy Management Co., Inc. ("McCarthy Management") and Dunkin' Brands, named in the

complaint as "Dunkin' Donuts Corp., Inc.,"  (collectively, the "Defendants") seeking a declaratory

judgment that its insurance policies provide no coverage for claims arising out of injuries CCD

employee Arteaga sustained when he fell from the roof of a building at CCD's facility.  Three of the

Defendants and PSM have now moved for summary judgment.  For the reasons set forth below,

PSM's motion for summary judgment is DENIED; CCD's cross-motion for summary judgment is

GRANTED in part and DENIED in part; Dunkin' Brands' cross-motion for summary judgment is

GRANTED; and Donut II's cross-motion for summary judgment is GRANTED in part and DENIED

1

in part.

## II.     Burden of Proof and Standard of Review

A party moving for summary judgment bears the burden of "show[ing] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific evidence showing that there is a genuine, triable issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. O'Connor v. Steeves, 994 F.2d 905, 907 (1st Cir.1993). If after viewing the record in this light the Court determines that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law, summary judgment is appropriate. Fed. R. Civ. P. 56(a).

## III.    Factual Background

Unless otherwise indicated, the following are the undisputed facts.[1]

---

[1]For the purposes of this Memorandum and Order, the parties' filing are abbreviated as follows: PSM's memorandum of law in support of its motion for summary judgment ("PSM Mem."); CCD's opposition and memorandum of law in support of its cross-motion for summary judgment ("CCD Mem."); Dunkin' Brands opposition and memorandum of law in support of its cross-motion for summary judgment ("Dunkin' Mem."); Donut II's opposition and cross-motion for summary judgment ("Donut II Mot."); PSM's statement of material facts ("PSM Statement of Facts"); CCD's statement of material facts ("CCD Statement of Facts"); CCD's response to PSM's statement of facts ("CCD Resp. to PSM Statement of Facts"); affidavit of James Kossuth in support of CCD's cross-motion for summary judgment ("Kossuth Aff."); and affidavit of Jose

### A.    The Accident and State Court Litigation

In December 2007, Arteaga was working as an employee of CCD at its location at 17 Kendrick Road in Wareham, Massachusetts (the "Premises"). (PSM Statement of Facts ¶ 14; CCD Resp. to PSM Statement of Facts ¶ 14). Arteaga was a production manager responsible for ensuring proper operations of all kitchen machines. (PSM Statement of Facts ¶ 14; CCD Resp. to PSM Statement of Facts ¶ 14). On the evening of December 4, 2007, Arteaga alleges that while working for CCD and servicing a piece of equipment on the roof of CCD's facility, he sustained serious injuries when he fell from the roof in his attempt to repair a piece of equipment. (PSM Statement of Facts ¶ 15; CCD Resp. to PSM Statement of Facts ¶ 15). Arteaga received workers' compensation benefits for his injuries under a workers' compensation policy issued by PSM to CCD. (PSM Statement of Facts ¶ 16; CCD Resp. to PSM. Statement of Facts ¶ 16).

On August 26, 2009, Arteaga filed a "complaint for discovery" in Plymouth Superior Court against CCD, Donut II, Dunkin' Brands (named in the complaint as Dunkin' Donuts Corp.) and McCarthy Management, among others, seeking certain information to frame his complaint for damages arising out of his personal injury and premises liability claims. (PSM Statement of Facts ¶¶ 17-18, Ex. 1 (2009 complaint); CCD Resp. to PSM Statement of Facts ¶¶ 17-18). When CCD, Donut II, Dunkin' Brands and McCarthy Management made a demand upon PSM for insurance coverage, PSM denied coverage. Kossuth Aff., ¶ 5, Ex. 3 (August 5, 2008 letter), ¶ 6, Ex. 4 (August 26, 2009 letter), ¶ 7, Ex. 5 (October 30, 2009 letter). The Superior Court subsequently dismissed Arteaga's lawsuit as to all defendants, but allowed him to inspect the Premises and have his

_____

S. Couto ("Couto Aff.") attached as an exhibit to the Kossuth affidavit.

deposition taken to preserve his testimony. (PSM Mem., Ex. 6 (docket); CCD Statement of Facts ¶ 7).

More than one year later, on December 2, 2010, Arteaga filed a second lawsuit in Plymouth Superior Court on behalf of himself and his family against Donut II, Dunkin' Brands, McCarthy Management, among others, but not CCD. (PSM Mem., Ex. 2 (2010 complaint); PSM Statement of Facts ¶ 20; CCD Resp. to PSM Statement of Facts ¶ 20; CCD Statement of Facts ¶ 8). In the 2010 complaint, Arteaga alleges that multiple defendants, including Donut II, Dunkin' Brands and McCarthy Management, negligently failed to warn of hazards, negligently failed to train its employees or negligently failed to inspect the premises, among other allegations. (PSM Mem., Ex. 2 at ¶ 89 (allegations against Donut II), ¶ 107 (same with respect to Dunkin' Brands), ¶ 113 (same with respect to McCarthy Management).

### B.    PSM Policies and Other Relevant Agreements

#### 1.    Lease Agreement Between CCD and Donut II

At the time of the accident in December 2007, CCD had a lease agreement whereby it leased the Premises from the property owner, Donut II. (CCD Statement of Facts ¶ 18; Couto Aff. ¶ 14). The lease required CCD to obtain an insurance policy protecting CCD and Donut II against any "loss, liability, or expense whatsoever from (without limitation) fire, personal injury, theft, death, property damage or otherwise arising or occurring upon or in connection with the Premises . . ." (Lease of Dunkin' Donuts Kitchen Facility between Donut II and CCD at § 12(c) (Aug. 15, 2002) ("Lease Agreement") attached as Ex. 6 to Kossuth Aff. ¶ 8).

#### 2.    Franchise Agreement Between CCD and Dunkin' Brands

CCD also had a franchise agreement with Dunkin' Donuts, Inc. (Dunkin Donuts Franchise Agreement for a Co-operative Production Location ("Franchise Agreement") between Dunkin Donuts, Inc. and CCD, attached as Ex. 7 to Kossuth Aff. ¶ 9). The Franchise Agreement similarly required CCD to obtain an insurance policy protecting Dunkin' Brands from "any loss, liability, or expense whatsoever from, without limitation, fire, personal injury . . . or otherwise arising or occurring upon or in connection with the [the leased premises] or by reason of FRANCHISEE's [CCD] operation or occupancy of the CPL." Id. at § 5.3.

The Franchise Agreement included an indemnity provision, which provided:

> Without limitation, [CCD] shall save, defend, exonerate, indemnify and hold harmless Dunkin' Donuts, and its subsidiaries, and their respective officers, directors, employees, agents successors and assigns, from and against (i) any and all claims based upon, arising out of, or in any way, related to the operation or condition of any part of the [Co-operative Production Location] or the Premises, the conduct of business thereupon, the ownership or possession of real or personal property and any negligent act, misfeasance or nonfeasance by [CCD] or any of its . . . employees, or licensees, and including without limitation, all obligations of [CCD] incurred pursuant to any provisions of this Agreement, and (ii) any and all fees (including reasonable attorney's fees), costs and other expenses incurred by or on behalf of Dunkin' Donuts in the investigation of or defense against any and all such claims.

Id. at § 11.1

CCD obtained two liability insurance policies issued by PSM which were in effect at the time of the December 4, 2007 incident: the Future Builder Business Owners Policy ("Primary Policy") and the Commercial Umbrella Liability Policy ("Umbrella Policy"). (PSM Mem., Exs. 4 & 5).

### 3. Primary Policy

Under the Primary Policy, PSM agreed to "pay any amounts up to [CCD's] Limit of

Coverage for which you or anyone else covered under [CCD's] *Liability Coverages* becomes liable as a result of 'bodily injury' . . . that is caused by an accident." PSM Mem., Ex. 4 at 32. The Primary Policy "explains the coverage [PSM] offers for liability to others for injury and property damage" and the restrictions on that coverage. PSM Mem., Ex. 4 at 31.

### a. Insured Contracts provision

The Primary Policy does not cover certain liability assumed by CCD. The policy states that "[PSM] will not cover liability that you or anyone else covered under your Liability Coverages assumed under contract or other agreement." PSM Mem., Ex. 4 at 34. However, PSM agreed to "cover liability: assumed in contract or agreement that is an 'insured contract'; or that [CCD] or anyone else covered under [CCD's] *Liability Coverages* would have in absence of the contract or agreement." Id. The Primary Policy defines an "insured contract" among other things, as "a lease of premises" or "that part of any other contract or agreement pertaining to [CCD's] business under which [CCD] assume[s] the tort liability of another to pay damages because of 'bodily injury' or 'property damage' . . . Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Id. at 34-35.

### b. "Compensation Plans" exclusion

The Primary Policy contains a "Compensation Plans" exclusion, which states that "[PSM] will not cover any obligation for which [CCD] or anyone else covered under [CCD's] *Liability Coverages* or any of [CCD's] insurers are liable under any workers' compensation, unemployment compensation, disability benefits or similar laws." Id. at 37.

### c. "Bodily Injury to Employees" exclusion

The Primary Policy also contains a "Bodily Injury to Employees" exclusion, which states,

in relevant part:

> If an employee of [CCD] or anyone else covered under [CCD's]
> *Liability Coverages* receives a "bodily injury" arising out of and in
> the course of their employment, we will not cover the following:
> [CCD's] liability for the 'bodily injury' as an employer or in any
> other capacity; [CCD's] liability for "bodily injury" to a spouse,
> child, parent, brother or sister of [CCD's] employee as a consequence
> of [CCD's] employee's "bodily injury;" any obligation to share
> damage with or indemnify someone else for damages that arise from
> the "bodily injury"; any damages claimed for care and loss of
> services.

Id. The exclusion further states, "[h]owever, [PSM] will cover liability that [CCD] or anyone else

covered under [CCD's] Liability Coverage's assumes under an 'insured contract' that is covered by

this policy." Id. The Primary Policy defines "bodily injury" as an "injury, sickness or disease that

occurs while your policy is in effect . . . ." Id. at 53. The term "employee" means an individual "(a)

employed by [CCD] in the ordinary course of [its] business; and (b) whom [CCD] compensate[s]

by salary, wages, or commissions; and (c) whom [CCD] govern[s] and direct[s] in [its] business; and

(d) whom is not a broker, factor, commission merchant, consignee, contractor or other agent or

representatives of the same general character." Id.

### d.  "Intra-Insured" Exclusion

In addition, the Primary Policy contains an "Intra-Insured" exclusion. Pursuant to this

exclusion, "[l]iability coverage provided by this form or policy does not apply to Bodily Injury,

Property Damage, Personal Damages or Advertising Damages sustained by [CCD] or any other

insured described in this form or policy. [PSM] will have no duty to defend or indemnify any insured

against a claim, suit or lawsuit by any other insured."  Endorsement in Primary Policy, Ex. 8 to the

Kossuth Aff.

The Primary Policy named Donut II, Dunkin' Donuts Corp. and McCarthy Management as

additional insureds. (PSM Mem., Ex. 5 at 64 (endorsement FB3407, "Liability Coverage for Additional Persons and Organizations)) and 6 (listing Dunkin' Donuts, Donut II and McCarthy Management for this coverage); id. at 65 (endorsement FB3590, "Additional Coverage for Grantor of Franchise") and 5 (Dunkin' Donuts listed for this coverage).

### 4.      The Umbrella Policy

PSM also issued CCD the Umbrella Policy, effective August 15, 2007 to August 15, 2008 ("Umbrella Policy"). (PSM Statement of Facts ¶ 13; PSM Mem., Ex. 5 (Umbrella Policy); CCD Resp. to PSM Statement of Facts ¶ 13). The policy applies as "excess insurance, not contributory, to other collectible insurance available to [CCD] . . . ." PSM Mem., Ex. 5 at 4. Pursuant to the Umbrella Policy, PSM agreed to pay the "ultimate net loss amount for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by the policy which are either excluded or not covered by underlying insurance because of Personal injury, Property Damage or Advertising Liability anywhere in the world." Id. at 2.[2]

The Umbrella Policy states that "if there is no underlying insurer obligated to do so, [it] shall have the right and duty to defend any suit against [CCD] seeking damages on account of personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent and [PSM] may make such investigation and settlement of any claim or suit as we deem expedient, but [PSM] shall not be obligated to defend any suit after the applicable limit of [its] liability has been exhausted." Id. at 3. The limit of liability under the policy is "$4,000,000 as the result of any one occurrence on account of personal injury, property damage or

---

[2]"Occurrence" is defined as "an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage, or advertising liability." Id. at 1.

advertising offense, or any combination thereof." Id. at Declarations (Item Two: Limits of Liability).

Similar to the Primary Policy, the Umbrella Policy contains a number of exclusions. The Umbrella Policy sets forth an identical "Intra Insured Exclusion" to that provided in the Primary Policy. In addition, the Umbrella Policy does not apply "to any obligation for which [CCD] or any of its Insurers may be held liable under any worker's or unemployment compensation, disability benefits or similar law; provided however, that this exclusion does not apply to liability of others assumed by you under any valid contract in being at the time of an occurrence . . . ." Id. at 2.

Under the "Employers Liability Exclusion," the Umbrella Policy affords no coverage for "bodily harm or injury, sickness . . . mental injury including care, loss of services or death arising out of these by: 1. An employee of the insured arising out of and in the course of employment by the insured; 2. The spouse, child, parent, brother or sister of that employee as a consequence of (1) above." PSM Mem., Ex. 5 (Endorsement to the Umbrella Policy). "This exclusion applies . . . whether the insured may be liable as an employer or in any other capacity and . . . [t]o any obligation to share damages with or repay someone else who must pay damages because of the injury." Id. The exclusion does not apply "to liability assumed by the insured under a written contract if such liability is covered by valid and collectible Underlying Insurance at the limits shown in the schedule of underlying insurance." Id. The policy defines "insured" to include the following:

> The named Insured as shown in the Declarations and if such organization is a corporation also includes . . . If the Named Insured designated in the declaration is an individual, if you are an insured but only for the conduct of a business which you are the sole proprietor, and your spouse is an insured for the conduct of such business . . . [a]ny person, organization, trustee, or estate with respect to which you are obligated by virtue of a written contract to provide insurance such as is afforded by this policy, but only with

respect to operations by or on behalf of, or to facilities of, or used by you . . . [a]ny executive officer, director, other employee or stockholder of yours while acting within the scope of his duties as such . . . .

Id. at 9.

## IV.    Procedural History

On November 2, 2009, PSM filed the instant complaint seeking a declaratory judgment that PSM's Primary Policy and Umbrella Policy do not provide coverage for any claims arising out of the December 4, 2007 incident.  (D.1).  In its answer, CCD submitted a counterclaim seeking a declaratory judgment that under both the Primary Policy and Umbrella Policy, PSM has a duty to indemnify (Counts I-II) and defend (Count III) it for any claims arising out of the incident and asserted claims for breach of contract (Count IV), breach of implied good faith and fair dealing (Count V) and violation of Mass. Gen. L. c. 93A, §§ 2 and 11 as well as Mass. Gen. L. c. 176D (Count VI).  (D. 10).  Donut II filed a similar counterclaim seeking a declaration that PSM has a duty to indemnify (Counts I - II) and defend (Count III) it for any claims arising out of the incident under both the Primary Policy and Umbrella Policy and asserted causes of action for breach of contract (Count IV), breach of implied good faith and fair dealing (Count V) and violation of Mass. Gen. L. C. 93A, §§ 2 and 11 as well as Mass. Gen. L. c. 176D (Count VI).  (D. 12).

Dunkin' Brands submitted a counterclaim against PSM seeking a declaratory judgment that Dunkin' Brands is entitled to coverage under the insurance policies issued by PSM to CCD.  (D. 17).  Dunkin' Brands also filed a cross-claim in its answer against CCD for a declaratory judgment that if the insurance policies do not provide coverage to CCD, CCD is obligated to defend and indemnify Dunkin' Brands with respect to claims arising from the incident, due to its failure to obtain the required insurance policies in accordance with the Franchise Agreement.  (D. 17).

CCD and Dunkin' Brands subsequently moved to stay Dunkin' Brands' cross-claim until the Court rendered a decision on PSM's complaint for a declaratory judgment. (D. 23). After the Court (Wolf, C.J.) allowed the motion (3/4/10 D. Entry), Dunkin' Brands moved to amend its cross-claim and CCD and Dunkin' Brands moved to stay the amended cross-claim. (D. 28, 29). After granting the parties' motions, the Court stayed the case on May 11, 2010, due to the uncertainty of whether Arteaga would file the underlying lawsuit against the parties and ordered the parties to file a status report when Arteaga filed the lawsuit. (D. 33). Once Arteaga did so on December 2, 2010, the parties submitted status reports in December 2010 (D. 35-37) and the matter was subsequently transferred to this session. (D. 38). In light of the parties' status reports, this session ruled that PSM could then move for summary judgment. (2/7/11 D. Entry). After PSM filed its motion, Donut II, Dunkin' Brands and CCD opposed the motion and cross-moved for summary judgment (D. 48) and the Court has now heard oral argument on these motions.

## V. Discussion

### A. General Principles

Under Massachusetts law, the interpretation of an insurance policy is a question of law for the court and appropriately decided on summary judgment. Valley Forge Ins. Co. v. Field, ___ F.3d ___, 2012 WL 556221, at *2 (1st Cir. Feb. 22, 2012); Scottsdale Ins. Co. v. Torres, 561 F.3d 74, 77 (1st Cir. 2009).[3] The court "begins with the actual language of the polic[y], given its plain and ordinary meaning." Brazas Sporting Arms, Inc. v. Am. Empire Surplus Lines Ins. Co., 220 F.3d 1, 4 (1st Cir. 2000). In doing so, the Court must "consider 'what an objectively reasonable insured, reading the relevant policy language, would expect to be covered.'" GRE Ins. Grp. v. Metro.

---

[3]The parties do not dispute that Massachusetts law applies.

Boston Housing P'ship, Inc., 61 F.3d 79, 81 (1st Cir. 1995) (quoting Trustees of Tufts Univ. v. Commercial Union Ins. Co., 415 Mass. 844, 849 (1993)). The insured claiming coverage "generally bears the burden of proving that a particular claim falls within a policy's coverage . . . while an insurer has the burden of proving the applicability of a particular exclusion." Allmerica Fin. Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 628 (2007).

"[A] liability insurer owes a broad duty to defend its insured against any claims that create a potential for indemnity." Doe v. Liberty Mut. Ins. Co., 423 Mass. 366, 368 (1996). Thus, a liability insurer would be required to defend an insured if the allegations in the underlying suit were reasonably susceptible of an interpretation that they stated a claim covered by the insurance policy. See Brazas, 220 F.3d at 4. The duty to defend is broader than the duty to indemnify: "the obligation to defend turns on the facts alleged in the complaint rather than the facts proven at trial." Id.

A liability insurer has no obligation to defend a claim that is excluded from coverage under the policy. Metro. Prop. & Cas. Ins. Co. v. Fitchburg Mut. Ins. Co., 58 Mass. App. Ct. 818, 820 (2003). A liability insurer claiming such an exclusion under the policy bears the burden of establishing that it applies. Brazas, 220 F.3d at 4. "Consistent with the Massachusetts general rule favoring insureds in policy interpretation, any ambiguities in the exclusion provision are strictly construed against the insurer." Id.; see Hakim v. Mass. Insurers' Insolvency Fund, 424 Mass. 275, 282 (1997).

### B.    PSM's Duty to Defend

Under the Primary Policy, PSM agreed to "pay any amounts up to [CCD's] Limit of Coverage for which you or anyone else covered under [CCD's] *Liability Coverages* becomes liable as a result of 'bodily injury' . . . that is caused by an accident." PSM Mem., Ex. 4 at 32. The

Primary Policy states that "[i]f a claim is made or a lawsuit is brought which is covered by this policy, [PSM] will defend the claim or suit even if the claim or lawsuit proves to be groundless, false or fraudulent. In defending a claim or suit, we may conduct any investigations we consider necessary, and make any settlements we consider advisable." Id. at 46. The Primary Policy further states that "[i]n addition to paying for liability up to your Limits for Coverage, we will pay . . . court costs charged to you or anyone else covered under your Liability Coverages in any lawsuit we defend; prejudgment interests awarded against you or anyone else covered under your Liability Coverages . . .; [and] reasonable expenses that you or anyone else covered under your Liability Coverages [incurs] . . . ." Id. at 46-47.

The Umbrella Policy similarly imposes on PSM a duty to defend CCD, Dunkin' Brands and Donut II against Arteaga's underlying claims. The Umbrella Policy applies as "excess insurance . . . ." PSM Mem., Ex. 5 at 4. Pursuant to the Umbrella Policy, PSM agreed to pay the "ultimate net loss amount for occurrences during the policy period in excess of the underlying insurance or for occurrences covered by the policy which are either excluded or not covered by underlying insurance because of Personal injury . . . anywhere in the world." Id. at 2. The Umbrella Policy further states that "if there is no underlying insurer obligated to do so, [it] shall have the right and duty to defend any suit against [CCD] seeking damages on account of personal injury, property damage or advertising liability, even if any of the allegations of the suit are groundless, false or fraudulent and [PSM] may make such investigation and settlement of any claim or suit as we deem expedient, but [PSM] shall not be obligated to defend any suit after the applicable limit of [its] liability has been exhausted." Id. at 3. The Umbrella Policy further provides that PSM "will pay, in addition to the applicable limit of liability: (1) all expenses incurred by us, all costs taxed against

the insured in any suit defended by us, and all interest on the entire amount of any judgment therein . . . (3) reasonable expenses incurred by the insured at our request[.]" Id.

It is undisputed that Arteaga sustained serious bodily injuries on the evening of December 4, 2007 when he fell from the roof of CCD's facility and that Arteaga's claims for premises liability against Donut II, Dunkin' Brands and McCarthy Management arise from such injuries. The parties also do not dispute that Donut II, Dunkin Brands and McCarthy Management are expressly named as additional insureds under both the Primary Policy and Umbrella Policy. Accordingly, these claims are covered under the policies unless, as PSM argues, the exclusions from coverage apply.

PSM argues that despite the Primary Policy's language regarding coverage for the insured contracts for bodily injuries caused by an accident on CCD's premises, PSM owes no duty to defend or indemnify the Defendants against Arteaga's claims because the claims related to the December 4, 2007 accident fall within several exclusions contained in the Primary Policy: (1) the "Compensation Plans" exclusion; (2) the "Bodily injury to Employee" exclusion; and (3) the "Intra-Insured" exclusion. PSM contends that the claims are excluded from coverage under the Umbrella Policy due to substantially similar exclusions. In their oppositions and cross-motions for summary judgment, Defendants argue that these exclusions do not apply to preclude coverage. The Court will address the applicability of each exclusion in turn.

C.      Exclusions

1.      "Compensation Plans" Exclusion Does Not Apply

The compensation plans exclusion states that PSM "will not cover any obligation for which you or anyone else covered under your *Liability Coverages* or any of your insurers are liable under

any worker's compensation, unemployment . . . or other similar laws." PSM Mem., Ex. 4 at 37. PSM argues that in light of the Workers Compensation Act ("WCA"), Mass. Gen. L. c. 152, § 24, this exclusion "explicitly precludes coverage for claims arising out of injuries for which an employee would be entitled to workers' compensation" and that since Arteaga is receiving such compensation through another PSM policy issued to CCD, the compensation exclusion applies here. PSM Mem. at 14-15. The Court finds this argument unavailing.

On its face, the provision excludes coverage of an insured's obligation for which the insured is liable under workers' compensation, unemployment, disability or other similar laws. Whether this exclusion applies to the instant case requires a determination of the "nature of the 'obligation' that form[s] the basis" of Arteaga's claims against Donut II and Dunkin' Brands in the underlying lawsuit. Great Sw. Fire Ins. Co. v. Hercules Bldg. & Wrecking Co., 35 Mass. App. Ct. 298, 305 (1993). Great Sw. is instructive on this point. There, an employee, who was injured in the course of his employment brought claims against his employer and the owner of the company for negligence in failing to secure workers' compensation insurance and in failing to use reasonable care to create and maintain a safe workplace. Id. at 299. The Court held that the insurance policy provision excluding coverage for "any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law," excluded coverage of the employer and its owner (named as an additional insured under the policy) for an employee's bodily injury. Id. at 303. The workers' compensation exclusion barred coverage of the company's owner because the nature of his obligation to secure workers' compensation insurance for the company's employees was "so far derived from, and integral to the workers' compensation statute that it fell within the [compensation]

exclusion" and the "risk that [he] would negligently fail in fulfilling that obligation was an excluded risk" under the exclusion. Id. at 305.

Unlike the plaintiff in Great Sw., Arteaga's underlying lawsuit asserts no claims against any of the Defendants regarding their obligations to him with respect to workers' compensation. Donut II and Dunkin' Brands are not seeking coverage from PSM for any claims related to any obligations under workers compensation or similar laws; rather, they seek coverage under PSM policies based on the indemnification provisions in their insured contracts. Dunkin' Brands seeks coverage based on the Franchise Agreement in which CCD agreed to, among other things, indemnify it for claims - including for bodily injury - related to the operation of CCD's business. Donut II seeks coverage under the Lease Agreement in which CCD agreed to obtain and maintain an insurance policy to protect Donut II from any loss, liability, or expense "without limitation" from personal injury and other occurrences arising in connection the premises. Thus, it cannot be said that the compensation plans exclusion applies here. See Cowan Sys. v. Harleysville Mut. Ins. Co., 457 F.3d 368, 374 (4th Cir. 2006) (finding that the workers' compensation exclusion applies only when the injured employee seeks workers' compensation (or other statutory compensation) from the named insured or additional insured, but not when the injured employee makes common-law claims against an additional insured).

PSM further contends that Arteaga's underlying claims are independently barred by the WCA, Mass. Gen. L. c. 152, § 24.[4] "Common law actions are barred by the exclusivity provision

---

[4]Mass. Gen. L. c. 152, § 24, provides, in relevant part: "[a]n employee shall be held to have waived his right of action at common law . . . in respect to an injury that is compensable under this chapter, to recover damages for personal injuries . . . ."

of the workers' compensation act where: the plaintiff is shown to be an employee; his condition is shown to be a personal injury within the meaning of the workers' compensation act; and the injury is shown to have arisen out of and in the course of . . . employment." Green v. Wyman-Gordon Co., 422 Mass. 551, 558 (1996) (internal quotation marks and citation omitted). That is, the "WCA provides the exclusive remedy for an employee's claim of personal injuries against an employer if the injury arises out of and in the course of employment." Mason v. Mass. Dep't of Env't Protection, 774 F. Supp. 2d 349, 357 n. 68 (D. Mass. 2011) (citing Foley v. Polaroid Corp., 381 Mass. 545, 548-49 (1980); Mass. Gen. L. c. 152, § 24). Here, however, Arteaga has asserted no claims in the underlying lawsuit against his employer, CCD, from whom he currently receives workers' compensation benefits. The WCA explicitly provides that a recipient of workers' compensation benefits "may [ ] bring a tort action against responsible third parties" in addition to its receipt of workers compensation benefits. Gaeta v. Nat'l Fire Ins. Co. of Hartford, 410 Mass. 592, 593 (1991). As discussed above, Arteaga brought negligence claims against Donut II, Dunkin' Brands and McCarthy Management only (PSM Mem., Ex. 2), who have no obligations to Arteaga under workers' compensation, unemployment, disability or similar laws. Any application of the WCA to preclude Arteaga from bringing claims arising out of his December 4, 2007 accident against his employer, CCD, therefore does not extend to his claims against the other defendants.

### 2. "Bodily Injury to Employee" Exclusion Does Not Apply

PSM further contends that the Primary Policy's "Bodily Injury to Employee" Exclusion applies to exclude coverage for all the Defendants. Although CCD concedes that the Primary Policy excludes coverage against CCD (that is not named in Arteaga's pending state court lawsuit) (CCD Mem. at 23-24)–where the exclusion precludes coverage for "[CCD's] liability for the 'bodily

injury' as an employer or in any other capacity; [CCD's] liability for 'bodily injury' to a spouse, child, parent, brother or sister of [CCD's] employee as a consequence of [CCD's] employee's 'bodily injury'; any obligation to share damage with or indemnify someone else for damages that arise from the 'bodily injury'; any damages claimed for care and loss of services," PSM Mem., Ex. 4 ("Restrictions On Your Policy's Liability Coverages") at 37–the Defendants argue that it does not exclude coverage for "insured contract[s]." Id. The exception for "insured contracts" states that PSM agrees to "cover liability that [CCD] or anyone else covered under [CCD's] Liability Coverage[s] assume[d] under an 'insured contract' that is covered by this policy." Id. "Insured contract" is defined as, among other things,"a lease of premises" or "that part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of 'bodily injury' or 'property damage.' Tort liability means a liability that would be imposed by law in the absence of any contract or agreement." Id. at 34-35.

To demonstrate that the exclusion, precluding coverage of bodily injury to an employee arising from actions undertaking during the course of his employment, is inapplicable, the employer (CCD) must have entered into an agreement to insure another party for its tort liability. The Primary Policy insures liability that CCD has "assumed in contract or agreement that is an 'insured contract'; or that [CCD] or anyone else covered under [CCD's] *Liability Coverages* would have in absence of the contract or agreement." PSM Mem., Ex. 4 at 34 (emphasis in original). In the underlying complaint, Arteaga alleges tort liability against Donut II and Dunkin' Brands, asserting a number of allegations of negligence, related to the Premises. (PSM Mem., Ex. 2 at ¶¶ 88-90 (Donut II), ¶¶ 106-108 (Dunkin' Brands)).

The insured contracts in which CCD assumed this tort liability was its lease and franchise

agreements with Donut II and Dunkin' Brands, respectively. In the Franchise Agreement, CCD agreed "[w]ithout limitation . . . [to] defend . . . indemnify and hold harmless [Dunkin' Brands] . . . against . . . any and all claims based upon, arising out of, or in any way related to the operation or condition of any party of the CPL or the Premises, the conduct of business thereupon . . . and any negligent act . . . ." Dunkin' Brands Opp., Ex. 7 (Franchise Agreement) § 11.1. CCD also agreed to obtain insurance to protect Dunkin' Brands "against any loss, liability or expense whatsoever from, without limitation . . . personal injury . . . arising or occurring upon in connection with the CPL or by reason of [CCD's] operation or occupancy of the CPL." Id. at § 5.3. Similarly, in its Lease Agreement with Donut II, CCD agreed to obtain an insurance policy to protect Donut II "against any loss, liability or expense whatsoever from (without limitation) . . . personal injury . . . arising or occurring upon or in connection with the Premises or be reason of the [CCD's] operation or occupancy of the Premises from personal injury and other occurrences arising in connection the premises." Dunkin' Brands Opp., Ex. 6 (Lease Agreement) § 12(c). The lease and franchise agreements protecting Donut II and Dunkin' Brands from premises liability are "insured contract[s]" within the meaning of the Primary Policy. PSM does not dispute that these agreements are indeed "insured contracts" as defined in the Primary Policy. Because the exclusion in the Primary Policy contains an exception for liability assumed under these insured contracts, it cannot be said that the "Bodily Injury to Employees" exclusion operates to preclude coverage of the insured contracts here (namely, the liability CCD assumed under the lease and franchise agreements with Donut II and Dunkin' Brands). See Garnet Constr. Co., Inc. v. Acadia Ins. Co., 61 Mass. App. Ct. 705, 708 (2004) (noting that the insured did not dispute that under a similar bodily injury to employees exclusion, where the injured individual was insured's employee, the insurer would be "obliged to

defend only if the fourth-party complaint could be said to raise a claim of liability assumed under an 'insured contract,' thereby triggering the exception to the exclusion"); <u>Cowan</u>, 457 F.3d at 374 (concluding that a similar employer's liability exclusion did not preclude coverage where the exclusion included an exception for insured contracts).

The cases upon which PSM relies to support its argument that the "Bodily Injury to Employees" exclusion precludes coverage, (PSM Mem. at 18-20), contain no exception for insured contracts in its bodily injury exclusion and are therefore inapplicable. <u>See, e.g.</u>, <u>Interco Inc. v. Mission Ins. Co.</u>, 808 F.2d 682, 685 (8th Cir. 1987) (affirming in part and reversing in part district court's decision that two insurance carriers had a duty to defend an employer in a suit arising out of its termination of an employee); <u>Davis v. Oilfield Scrap & Equip. Co., Inc.</u>, 503 So. 2d 674, 676 (La. Ct. App. 3d Cir. 1987) (applying bodily injury exclusion in affirming summary judgment in favor of employer's insurer in a tort suit an employee brought against an employer for damages allegedly sustained as a result of an intentional act by co-employee); <u>Santiago v. Equip. Leasing of Cal.</u>, 437 So.2d 971, 972-73 (La. Ct. App. 3d Cir. 1983) (affirming summary judgment and finding that bodily injury exclusion precluded coverage where an employee received fatal injuries during the course of his employment); <u>Truck Ins. Exch., Inc. v. Vassholz</u>, 839 S.W.2d 22, 22 (Mo. App. 1992) (similar).

### 3.    "Intra-Insured" Exclusion Does Not Bar Coverage

PSM contends that any indemnity obligations CCD may have to Donut II and Dunkin' Brands fall squarely within the terms of the "Intra-Insured" exclusion in the Primary Policy, which provides that "[l]iability coverage . . . does not apply to Bodily Injury . . . sustained by you or any other insured described in this form or policy.  We will have no duty to defend or indemnify any

insured against a claim, suit or lawsuit by any other insured."  Endorsement in Primary Policy, Ex. 8 to the Kossuth Affidavit, D. 51.  Specifically, PSM argues that since Donut II and Dunkin' Brands are "additional insureds" and CCD and Arteaga are "insureds" under the Primary Policy, the intra-insured exclusion excludes the indemnity liability owed from CCD to Donut II and Dunkin' Brands for any liability arising out of Arteaga's injuries sustained on the Premises.  The Defendants contend that reading the intra-insured exclusion to preclude such coverage would be contrary to the expectation of CCD when it obtained the policies with PSM, having entered into the insured contracts with Dunkin' Brands and Donut II to cover premises liability, and having added these entities as additional insureds to the Policy to cover precisely these types of bodily injuries on the Premises.

When interpreting an insurance policy, the Court must read the policy language as a whole. Fireman's Fund Ins. Co. v. Special Olympics Int'l, 346 F.3d 259, 261 (1st Cir. 2003); USM Corp. v. Arthur D. Little Sys., Inc., 28 Mass. App. Ct. 108, 116 (1989) (noting that "[t]he object of the court is to construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose").  The court considers "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered." Franklin v. Professional Risk Mgmt. Servs., Inc., 987 F. Supp. 71, 75 (D. Mass. 1997).  "[A]ny ambiguities in the exclusion provision are strictly construed against the insurer." Brazas, 220 F.3d at 4.  "Ambiguity does not exist simply because the parties disagree about the proper interpretation of a policy provision; rather, '[a]mbiguity exists when the policy language is susceptible to more than one rational interpretation.'" Valley Forge, 2012 WL 556221, at *2 (quoting Brazas, 220 F.3d at 4-5).  If there are any ambiguities, the Court must "construe the policy in favor of the insured and against the

drafter, who is invariably the insurer, unless specific policy language is controlled by statute or prescribed by another authority." Metro. Prop. and Cas. Inc. Co. v. Morrison, 460 Mass. 352, 363 (2011). Accordingly, "if 'there are two rational interpretations of policy language, the insured is entitled to the benefit of the one that is more favorable to it.'" GRE Ins. Group, 61 F.3d at 81 (quoting Hazen Paper Co. v. United States Fidelity & Guaranty Co., 407 Mass. 689, 700 (1990)). "This rule of construction applies with particular force to exclusionary provisions." Hakim, 424 Mass. at 282.

In the instant case, both the Primary Policy and the Umbrella Policy provided coverage for "insured contracts" which, as discussed above, includes those agreements entered into between CCD and Donut II and Dunkin' Brands, respectively. These insured contracts between CCD and Dunkin' Brands and Donut II indemnify Donut II and Dunkin' Brands against liability for personal injury connected to the Premises. Dunkin' Brands and Donut II were also added to the Policy, which afforded them coverage as additional insureds under the Policy. In light of the coverage for the insured contracts and coverage for Dunkin' Brands and Donut II as additional insureds under the Primary Policy, CCD would reasonably have expected that the intra-insured exclusion would not operate to bar coverage for liability it assumed in these contracts for Arteaga's injury on the Premises and, accordingly, it is rational to interpret the intra-insured exclusion as inapplicable.

According to PSM's interpretation of the exclusion that PSM has "no duty to defend or indemnify any insured against a claim, suit or lawsuit by any other insured," the exclusion precludes coverage for all claims among and between insureds. (PSM Mem. at 16). PSM specifically contends that because Arteaga, Donut II, Dunkin' Brands and McCarthy Management all qualify as "any other insured" as that term is used in the exclusion and because they are "insureds," any

claims they have against "other insureds" like Donut II or Dunkin' Brands are excluded from coverage. (PSM Mem. at 17). Under PSM's reading of the exclusionary language, indemnitees such as Dunkin' Brands and Donut II named as additional insureds are never covered under the Primary Policy because the indemnity obligation is owed from the insured (CCD as indemnitor) to an additional insured (Donut II and Dunkin Brands as indemnitees) and would fall within the intra-insured exclusion. PSM's reading would only allow coverage for liability assumed in insured contracts if the additional insured is not also an indemnitee under the insured contract. Yet, the insured contract provision in the Primary Policy contains and contemplates no such limitation – i.e., whereby an insured contract that also includes an indemnitee as an additional insured is not covered. PSM's contention that the intra-insured exclusion does not operate to eliminate all coverage intended for additional insureds under the insured contract provision and that instead, it provides coverage to Defendants where a third party (who is not an insured) brings suit against them, does not address the critical issue here: whether the language of the intra-insured exclusion can be reconciled with that of the insured contract provision where the indemnitee is an additional insured under the policy. Nothing in the policies indicates the parties intended the insured contract provision or the additional insured coverage to be limited in this manner.[5]

Because the exclusion is susceptible to more than one reasonable interpretation (PSM's

---

[5]PSM cites Morgan v. Am. Family Mut. Ins. Co., 2007 WL 1624753, at * 2-3 (D. Ariz. June 5, 2007), PSM Mem. at 16, for the proposition that the intra-insured exclusion is enforceable in this case, but it lends support to the Defendants' position. There, in applying Arizona's doctrine of reasonable expectations, the Court concluded that the intra-insured exclusion was in fact unenforceable. Id. In affirming summary judgment on this basis, the Ninth Circuit noted that "[w]here … one section would lead a reasonably intelligent person to conclude that he is covered under the policy, but another section inconspicuously eviscerates that coverage, the section limiting the coverage is invalid." Morgan ex rel. Clark v. Am. Family Mut. Ins. Co., 336 Fed. Appx. 644, 645 (9th Cir. 2009).

interpretation that the exclusion applies whenever one insured asserts claims against any other insured regardless of the existence of an insured contract provision and CCD's interpretation that the exclusion does not apply because of the existence of an insured contract provision and coverage of additional insureds) the Court finds this exclusionary provision is ambiguous. In strictly construing the exclusion against PSM, the insurer who has the burden of establishing that the exclusion applies, Hakim, 424 Mass. at 281-82, the Court concludes that it does not preclude coverage here.[6]

The parties extensively discuss and the Defendants heavily rely on Parker v. John Moriarty & Assocs., Inc., 2007 WL 2429719, at *7-8 (Mass. Super. July 29, 2007) to support their argument that applying the intra-insured exclusion would defeat CCD's expectation of coverage in adding Dunkin' Brands and Donut II as additional insureds to the Primary Policy in light of the insured contracts and insured contract provision in the Primary Policy (CCD Mem. at 14-18; Dunkin' Brands Mem. at 13-15). The Court, however, finds more instructive the reasoning in Twin City Fire Ins. Co., Inc. v. Ohio Cas. Ins. Co., Inc., 480 F.3d 1254, 1262 (11th Cir. 2007) because it construed a cross-suit exclusion containing similar language to the intra-insured exclusion here. There, the

_____

[6]With respect to PSM's argument that CCD is not entitled to coverage for claims asserted by Arteaga as an "insured-employee" directly against CCD as an "insured-employer"(PSM Mem. at 16-17), the Court notes that CCD is not named as a defendant in the underlying lawsuit, whereas Donut II, McCarthy Management and Dunkin' Brands are named defendants. (PSM Mem., Ex. 2 (complaint)). CCD seeks coverage only to the extent Dunkin' Brands and Donut II have sought indemnification from CCD under the policies (by virtue of their insured contracts). As discussed above, the exclusions do not apply to preclude such coverage. To the extent that PSM argues that all of the exclusions should be interpreted to deny coverage to Dunkin' Brands and Donut II for any liability that would not have been covered if Arteaga's claims had been brought directly against CCD, PSM Mem at 23-24 (relying on Simco Enters., Ltd. v. James River Ins. Co., 566 F. Supp. 2d 555 (E.D. Tex. 2008)), the Court declines to adopt this position.

cross-suit exclusion precluded "[a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy." Id. The Eleventh Circuit rejected the insurer's argument that the cross-suit exclusion operated to preclude coverage of its insured's indemnity liability owed to an additional insured by virtue of an insured contract. Id. at 1262-63. The Court explained that applying the exclusion in the manner advanced by the insurer would effectively nullify the additional insured coverage, insofar as "[t]he party ordinarily named as an additional insured by virtue of an indemnity contract is the indemnitee . . . [b]ut . . . an indemnitee named as an additional insured would not be covered, because the indemnity obligation would thereby be owed from one insured to another and fall under the cross-suit exclusion." Id. at 1262. To apply the exclusion would not only eliminate the additional insured provision, but would also conflict with its terms as well as those of the insured contract provision, which did "not say that a contract that also happens to include the indemnitee as an additional insured is not covered." Id. at 1263. The Court noted that nothing in the policy contemplated the result sought by applying the cross-suit exclusion, namely that "a named insured who adds an indemnitee as an additional insured in such a contract also loses insured contract coverage." Id. In light of the conflicts and inconsistencies within the policy, the Court found the cross-suit exclusion "at best ambiguous with respect to obligations owed from an insured to an additional insured" and that "it would make little sense to apply the cross-suit exclusion to indemnity obligations owed by a named insured to an additional insured." Id. at 1262. The Twin City panel construed the ambiguity against the insurer and in favor of coverage, thereby refusing to apply the cross-suits exclusion. Id. at 1263.

Similarly, applying the intra-insured exclusion here would effectively bar coverage for an indemnitor's obligation (CCD) to an indemnitee (Defendants) under the insured contracts (Lease

and Franchise Agreements). The principle underlying the Court's decision in <u>Twin City</u> is persuasive here, where, as here, Defendants are "additional insureds" and indemnitees by virtue of their insured contracts with the insured (CCD) and coverage as an additional insured would be eviscerated by applying the intra-insured exclusion to them.[7]

### 4.    Exclusions under the Umbrella Policy

The Umbrella Policy provides that PSM will "pay on behalf of the insured the ultimate net loss for occurrence during the policy period in excess of the underlying insurance or for occurrences by this policy which are either excluded or not covered by underlying insurance because of Personal Injury, Property Damages, or Advertising Liability anywhere in the world." PSM Mem., Ex. 5 at 8. To the extent that the damages claimed by Arteaga exceed CCD's policy limits under the Primary Policy, the Umbrella Policy provides excess coverage, unless an exclusion applies.

The exclusions at issue under the Umbrella Policy are substantially similar to the exclusions under the Primary Policy. First, because the language of the intra-insured exclusion is identical to that contained in the Primary Policy, PSM Mem., Ex. 5; PSM Mem. at 30, as discussed above, the intra-insured exclusion does not apply to preclude coverage. Second, to the extent that PSM argues that the exclusion under the Umbrella Policy regarding worker's compensation precludes coverage,

---

[7]PSM also relies on <u>Ohio Casualty Ins. Co. v. Holcim, Inc.</u>, 744 F. Supp. 2d 1251 (S.D. Ala. 2010), construing a similar cross-suits exclusion to that at issue in <u>Twin City</u> and this case. In <u>Ohio Casualty</u>, however, the insurer did not ask the Court to enforce the cross suits exclusion in a manner that eliminated coverage for indemnity liability. 744 F. Supp. 2d at 1268. In finding that the cross-suits exclusion applied to exclude coverage, the Court explained that applying the cross-exclusion would not eliminate the "additional insured" coverage for indemnity obligations; "rather, the 'additional insured' coverage would remain viable and intact for indemnitor/indemnitee liability under that 'insured contract.'" <u>Id.</u> That, as explained more fully above, would not be result in this case.

PSM Mem. at 31, the Court concludes that it does not bar Arteaga's claims against Donut II and Dunkin' Brands for the reasons discussed *supra* in regard to the Primary Policy.  Third, the "Employers Liability Exclusion" under the Umbrella Policy also does not preclude coverage.  This exclusion affords no coverage for "bodily harm or injury, sickness . . . mental injury including care, loss of services or death arising out of these by:  1.  An employee of the insured arising out of and in the course of employment by the insured . . . ."  PSM Mem., Ex. 5 (Endorsement to the Umbrella Policy).  "This exclusion applies . . . whether the insured may be liable as an employer or in any other capacity and . . . [t]o any obligation to share damages with or repay someone else who must pay damages because of the injury."  Id.  The exclusion does not apply "to liability assumed by the insured under a written contract if such liability is covered by valid and collectible Underlying Insurance at the limits shown in the schedule of underlying insurance."  Id.  The parties agree that the Employers Liability Exclusion is substantively identical to the Bodily Injury Exclusion in the Primary Policy which contains an exception for insured contracts.  Id.; PSM Mem. at 30; CCD Mem. at 28.  Thus, for the reasons discussed above, the  Employers Liability Exclusion in the Umbrella Policy does not operate to preclude coverage.

Because PSM has failed to meet its burden to show that any of the exclusions apply to deny coverage under the Primary Policy and Umbrella Policy, the Court finds that PSM has a duty to defend CCD and the additional insureds, Donut II and Dunkin' Brands, in the underlying lawsuit.

Although CCD, Dunkin' Brands and Donut II also seek summary judgment that PSM has a duty to indemnify them in the lawsuit, the duty to indemnify "arises only after the insured's liability has been established."  Wilkinson v. Citation Ins. Co., 447 Mass. 663, 671 (2006).  As previously noted, the duty to indemnify is narrower than the duty to defend, Home Ins. Co. v. St.

Paul Fire & Marine Ins. Co., 229 F.3d 56, 66 (1st Cir. 2000). Unlike the duty to defend, the duty to indemnify is determined by the facts as they unfold at trial or in a settlement agreement, rather than simply the pleadings. See Travelers Ins. Co. v. Waltham Indus. Labs. Corp., 883 F.2d 1092, 1099 (1st Cir. 1989). Because the underlying lawsuit has not reached its conclusion or been otherwise resolved, the Court cannot determine at this time whether PSM has a duty to indemnify CCD, Dunkin' Brands and Donut II.

Accordingly, PSM's motion for summary judgment is DENIED; CCD's cross-motion for summary judgment is GRANTED as to Count III (duty to defend) of its counterclaim and DENIED as to Counts I-II (duty to indemnify) of same; Donut II's cross-motion for summary judgment is GRANTED as to Counts III (duty to defend) of its counterclaim and DENIED as to Counts I-II (duty to indemnify) of same; and Dunkin' Brands' cross-motion for summary judgment is GRANTED only to the extent that it sought summary judgment as to PSM's duty to defend.

### D. Cross-Motions For Summary Judgment of CCD and Donut II

In addition to their request for a declaratory judgment that PSM has a duty to defend and indemnify them under its policies in the underlying litigation, CCD and Donut II bring three additional causes of action against PSM in their counterclaims: breach of contract (Count IV); breach of covenant of good faith and fair dealing (Count V); and unfair and deceptive practices under Mass. Gen. L. c. 176D and Mass. Gen. L. c. 93A (Count VI).[8] The Court will address each in turn.

### 1. Breach of Contract (Count IV)

---

[8]The causes of action in the counterclaims submitted by CCD and Donut II are identical. Compare D. 10 (CCD Answer and Counterclaim) with D. 12 (Donut II Answer and Counterclaim).

Initial wrongful denial of coverage, even where the insurer has some justification for its denial, constitutes a breach of the insurance contract. Middlesex Mut. Assur. Co. v. Puerta de la Esperanza, LLC, 2011 WL 1361552, at *3 (D. Mass. Apr. 11, 2011). "It is immaterial whether the insurer proceeds in good faith or in bad faith to avoid the duty to defend under a liability insurance policy because 'to impose upon the insured the cost of compelling his insurer to honor its contractual obligation is effectively to deny him the benefit of his bargain.'" Hanover Ins. Co. v. Golden, 436 Mass. 584, 587 (2002) (quoting Rubenstein v. Royal Ins. Co., 429 Mass. 355, 360 (1999)). Given the Court's ruling that PSM has a contractual obligation to provide a defense to the insureds in relation to the underlying litigation, the cross-motions for summary judgment of CCD and Donut II as to the breach of contract claim against PSM is GRANTED.

### 2.     Breach of Covenant of Good Faith and Fair Dealing (Count V)

In Massachusetts, "[e]very contract implies good faith and fair dealing between the parties to it." Warner Ins. Co. v. Comm'r of Ins., 406 Mass. 354, 362 n. 9 (1990). "The implied covenant of good faith and fair dealing provides that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471 (1991) (quotations and citations omitted).

CCD and Donut II argue that PSM breached the implied covenant of good faith and fair dealing when it refused to defend and indemnify CCD and the additional insureds for a claim expressly covered under the terms of PSM's policies. (CCD Mem. at 31; Donut II Opp. at 2). CCD and Donut II further argue that such breach of the implied covenant has caused them damages, including the cost of the instant declaratory judgment action by PSM and the underlying suit. Id. Apart from PSM's denial of coverage for Arteaga's underlying claims, no jury could reasonably

conclude that PSM breached the implied covenant of good faith and fair dealing since this case does not involve any misbehavior beyond a breach of contract. Insurance companies have no general duty to interpret its insurance contracts in favor of the insured. In Massachusetts, it is the court's role to interpret insurance contracts while being mindful that policy interpretation is to favor insureds and that ambiguous terms must be resolved against the insurer. If insurance companies were required to follow the same approach, a "potential for unfairness [ ] might arise if a violation of the covenant of good faith and fair dealing were found to occur every time an insurer interpreted a contract in a manner favorable to itself." <u>Middlesex Mut. Assur. Co.</u>, 2011 WL 1361552, at *4 (concluding that insured had no viable claim for breach of covenant of good faith and fair dealing where insured argued that insurer wrongfully interpreted the policy in favor of itself to the detriment of the insured).

CCD and Donut II are therefore not entitled to summary judgment as to Count V.

### 3. Mass. Gen. L. c. 176D and Mass. Gen. L. c. 93A (Count VI)

Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. L. c. 93A, § 2(a). "'Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a [Chapter] 93A violation is a question of law.'" <u>Arthur D. Little, Inc. v. Dooyang Corp.</u>, 147 F.3d 47, 54 (1st Cir.1998) (quoting <u>Ahern v. Scholz</u>, 85 F.3d 774, 797 (1st Cir. 1996) (citation and internal quotations omitted)). "[A] mere breach of contract does not constitute an unfair or deceptive trade practice under 93A." <u>Commercial Union Ins. Co. v. Seven Provinces Ins. Co.</u>, 217 F.3d 33, 40 (1st Cir. 2000); <u>see</u> <u>Gulezian v. Lincoln Ins. Co.</u>, 399 Mass. 606, 613 (1987) (noting that "[a]n insurance company which in good faith denies

a claim of coverage on the basis of a plausible interpretation of its insurance policy is unlikely to have committed a violation of G.L. c. 93A").

CCD and Donut II contend that PSM violated Chapter 93A when it engaged in "unfair claim settlement practices" under c. 176D. Mass. Gen. L. c. 176D was intended to "remedy a host of possible violations in the insurance industry and to subject insurers committing violations to the remedies available to an injured party under G.L. c. 93A." Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 562 (2001). A violation of c. 176D, § 3 does not, alone, create a private right of action; it outlines practices which violate c. 93A, § 2. Scott v. Vermont Mut. Ins. Co., 2011 WL 4436984, at * 7 (D. Mass. Sept. 22, 2011). CCD and Donut II argue that PSM has committed an unfair claim settlement practice under c. 176D, § 3 (9), in "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear," Mass. Gen. L. c. 176D, § 3 (9) (f), and in doing so, has also violated c. 93A.

To determine whether liability is reasonably clear depends on "'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.'" Nyer v. Winterthur Int'l, 290 F.3d 456, 461 (1st Cir. 2002) (quoting Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956-57 (1995)). "[T]hat liability encompasses both fault and damages." Clegg v. Butler, 424 Mass. 413, 421 (1997). "This is an objective standard . . . which takes into account the totality of the circumstances." Scott v. Vermont Mut. Ins. Co., 2011 WL 4436984, at *8 (D. Mass. Sept. 22, 2011). Massachusetts courts have emphasized that c. 176D does not "penalize insurers who delay in good faith when liability is not clear and requires further investigation." Clegg, 424 Mass. at 421.

There is no genuine issue of material fact regarding PSM's actions in regard to its denial of

the Defendants' claims for coverage. On this undisputed record, no finder of fact could reasonably conclude that PSM failed to negotiate a settlement in good faith on behalf of CCD, Donut II, and Dunkin' Brands. There is no evidence in the current record that PSM acted in bad faith in denying coverage based on its own rational interpretation of the policy or in bringing a declaratory judgment action to determine the contours of such coverage. The reasons for the Court's finding that no exclusions are applicable to deny coverage in light of CCD's insured contracts with additional insureds Donut II and Dunkin' Brands, center on the interplay between the insured contract language and the exclusions in the policies. PSM interpreted the exclusionary language as precluding coverage regardless of the existence of CCD's insured contracts. Although the Court has concluded that PSM has not met its burden to show the exclusions apply in such a manner, it does not follow that PSM is liable under c. 176D and 93A merely for interpreting its policies in a way that denies coverage, particularly when neither party has cited to any binding authority that answers the precise legal issues raised in this case. "Liability under c. 176D and 93A does not attach merely because an insurer concludes that it has no liability under an insurance policy and that conclusion is ultimately determined to have been erroneous." <u>Pediatricians, Inc. v. Provident Life & Accident Ins. Co.</u>, 965 F.2d 1164, 1173 (1st Cir.1992). An insurer who takes "[a] plausible, reasoned legal position that may ultimately turn out to be mistaken-or simply . . . unsuccessful-is outside the scope of the punitive aspects of the combined application of c. 93A and c. 176D." <u>Guity v. Commerce Ins. Co.</u>, 36 Mass. App. Ct. 339, 343 (1994).

Accordingly, CCD and Donut II are not entitled to summary judgment as to Count VI of their

counterclaims.[9]

## VI. Conclusion

For the foregoing reasons, PSM's motion for summary judgment is DENIED; CCD's motion for cross-summary judgment is GRANTED in part and DENIED in part; Donut II's Cross-Motion for Summary Judgment is GRANTED in part and DENIED in part; Dunkin' Brands' cross-motion for summary judgment is GRANTED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge

---

[9]Although McCarthy Management is named as an additional insured in the Primary Policy, it has responded neither to PSM's complaint nor its motion for summary judgment. The Court, therefore, enters default for McCarthy Management's failure to plead or otherwise defend pursuant to Fed. R. Civ. P. 55(a) and does not otherwise address the merits of the case against McCarthy Management.